# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 2:18cr00010 |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | BY: PAMELA MEADE SARGENT |
| **ERIC HORNE,** ) | United States Magistrate Judge |
| Defendant ) | |

This matter is before the court on the motion of the Government to allow the forcible medication of the defendant, Eric Horne, ("Horne"), in an attempt to restore him to competency to stand to trial on a charge of premeditated murder, in violation of 18 U.S.C. § 1111. Based on the reasoning set forth below, the court finds that the Government has an important interest in prosecuting the defendant that is not overcome by any special circumstances. Based on this finding, the court will schedule an evidentiary hearing to determine if the motion for forcible medication should be granted pursuant to *Sell v. United States*, 539 U.S. 166 (2003). The court also will order Bureau of Prisons, ("BOP"), personnel to provide an addendum to their recent report, setting forth their prescribed treatment plan to restore the defendant to competency, and will recommit the defendant to the custody of the BOP Federal Medical Center at Butner, N.C., ("Butner"), for preparation of this addendum.

*I.*

On August 21, 2018, an Abingdon grand jury returned a one-count Indictment charging Horne with the premeditated murder of his U.S. Penitentiary Lee, ("USP

Lee"), cellmate on October 28, 2016, in violation of 18 U.S.C. § 1111. Horne initially appeared before the court on September 21, 2018. At this appearance, defense counsel requested that Horne be detained for a psychiatric or psychological evaluation to determine if he was competent to stand trial. The Government raised no objection to the motion. The court granted the motion, and Horne was detained and transported to Metropolitan Correctional Center, ("Metropolitan"), New York, N.Y., for this evaluation. By report dated December 19, 2018, (Docket Item No. 21), Elissa R. Miller, Psy.D., Chief Psychologist and Samantha E. DiMisa, Ph.D., a forensic psychologist, stated that Horne suffered from schizoaffective disorder, bipolar type, and did not possess a factual or rational understanding of the proceedings against him, did not have the capacity to assist legal counsel in his defense and did not have the ability to adequately make decisions regarding his legal strategy.

Upon Horne's return to the Western District of Virginia, the court conducted a competency hearing on February 20, 2019. Based on the BOP evaluators' report, the court found Horne incompetent to stand trial. (Docket Item No. 28.) The court committed Horne to the custody of the Attorney General to be hospitalized for treatment for a reasonable period, not to exceed four months, to determine whether there was a substantial probability that the defendant would attain the capacity to proceed to trial.

Horne subsequently was transported to Butner. By Forensic Evaluation report dated October 28, 2019, (Docket Item No. 29), Adeirdre Stribling Riley, Ph.D., a forensic psychologist, opined that Horne continued to suffer from schizoaffective

disorder, bipolar type, and an antisocial personality disorder and remained incompetent to proceed to trial. Riley further opined that there was a substantial probability that Horne would attain the capacity to permit trial to proceed, if he were to be treated with antipsychotic medication, which he was refusing. She stated that other less intrusive methods of treatment, such as psychotherapy, were not likely to restore Horne's competence. Riley requested that, should the court find that additional restoration efforts were appropriate, the court order treatment with psychotropic medication on an involuntary basis.

Riley further opined that the treatment of Horne with psychotropic medication on an involuntary basis was not justified based on *Washington v. Harper*, 494 U.S. 210 (1990), in that Horne did not present a danger to himself or others in his then-current conditions of confinement. Riley requested that, should the court find that under *Sell,* "important governmental interests are at stake" in bringing Horne to trial warranting consideration of involuntary treatment to restore Horne to competency, the court recommit Horne to Butner and order Butner's Chief Psychiatrist, Dr. Logan Graddy, M.D., to review the case and submit an addendum to Riley's Forensic Evaluation report outlining, in detail, a proposed treatment plan.

Subsequently, the Government moved the court to order that Horne be involuntarily medicated to restore him to competency. ("Motion") (Docket Item No. 32). Counsel and Horne appeared before the court on January 13, 2020, for a hearing on the Motion to address whether important governmental interests are at stake in bringing Horne to trial. Psychologist Riley testified at this hearing by telephone conference call. While Riley stated that a specific treatment plan had not yet been

developed to restore Horne to competency, she stated that any such treatment would require that Horne receive antipsychotic medication and, possibly, a mood stabilizing medication. Riley said, that once a treatment plan was in place, Horne would be offered oral antipsychotic medication, at first, in an effort to determine if the medication would cause any reaction. Riley stated that, in her opinion, there was a substantial likelihood that Horne could be restored to competency based on his symptom presentation and the fact that his symptoms have been amenable to treatment in the past. Once treated with antipsychotic medication, Riley stated, Horne likely would experience improved thought organization and less paranoia. Riley stated that health care providers typically would request treatment for a period of 120 days to restore a defendant to competency.

Riley further testified that, if Horne were not restored to competency, an additional evaluation of Horne should occur under 18 U.S.C. § 4246 to determine if Horne should be committed to the custody of the Attorney General because he posed a substantial risk of bodily injury to another person or serious damage to property of another. If this were found to be so, Riley said, Horne could remain committed until he no longer posed such a danger. Riley also testified that, under 18 U.S.C. § 4246, Horne could be conditionally discharged into the community. If committed, Riley said, Horne would receive at least annual reviews of his psychological condition, but these reviews would be provided to the district court in the district where Horne was being held.

Riley testified that, if Horne were to go to trial and be found not guilty by reason of insanity, he could be committed under 18 U.S.C. § 4243 until such time as

his mental condition did not pose a substantial risk of bodily injury to another person or serious damage to property of another. The court which ordered a defendant's commitment pursuant to 18 U.S.C. § 4243 would retain jurisdiction over such a defendant, Riley said. While 18 U.S.C. § 4243 requires the Attorney General to attempt to place a defendant committed under the section in a suitable state-run mental health facility, Riley said, most states would not accept these defendants for placement in state facilities.

Riley stated that she was not aware that Horne's sickle cell anemia would have any effect on his treatment to restore him to competency. Nonetheless, Riley said, psychiatry and medical providers would be involved in developing and monitoring any treatment plan for Horne. Riley confirmed that she did not believe Horne posed any danger to himself or others while held at Butner in its most restrictive housing setting. She stated that Horne was held in Butner's most restrictive housing unit for the entirety of his stay there, and he did not transition to any less restrictive setting. She said the most restrictive housing at Butner was for those defendants experiencing florid psychosis with active hallucinations and who were unable to engage in self-care.

Defense counsel also submitted into evidence, under seal, partial transcripts of the grand jury testimony of three USP Lee inmates[1] housed in the special housing unit with Horne at the time that he allegedly killed his cellmate. The testimony of each of these inmates occurred before the grand jury on November 14, 2016 – only

---

[1] The court is not listing the names of these inmates to protect their identities as grand jury witnesses.

days after the death of Horne's cellmate on October 28, 2016. One of these inmates testified that the victim told him that, near the time of the victim's death, Horne was acting strangely, including waking up early in the morning and "preaching." This inmate testified that he saw Horne place the victim in a headlock on the date of the victim's death. He stated that he saw the victim alive after this incident. When he later asked Horne where his cellmate was, Horne told him, "Gone." Then Horne said, "You can't be, you can't be afraid of death if you want to go to heaven, game over." He said that Horne then made a motion with a finger going across his neck.

Another of these inmates stated that he had been acquainted with Horne when they were both housed in general population at USP Lee. This inmate testified that Horne's demeanor was different in the weeks prior to the death of his cellmate. This inmate said that Horne was not the same person, in that he would get up early in the morning and start screaming and preaching with his eyes wide open. He said that Horne did not appear to be the same person he had known when they were on the compound together. This inmate said that, on the day Horne's cellmate died, Horne was standing at the door of their cell, preaching that he wanted to die to go to heaven. He said that Horne told him, "I will wait for you there."

Another of these inmates testified that he had urged the victim to get out of the cell with Horne because it was like Horne had three different personalities. This inmate said that, when he and the victim would be talking between their cells about the Bible, Horne would get up and say, "Oh, you can't talk about God like that." This inmate said that the next day, Horne might act like a "gangsta rapper" and, then, be different the next day. The inmate said that, one day, Horne would be standing

on top of his bunk and then the next day Horne would be calm. He said that the victim told him that Horne was "driving [him] crazy." This inmate also testified, "I'm not a doctor, but I know he [Horne] ain't dealing with a full deck." This inmate said that he saw Horne jump down from his top bunk and grab the victim around his neck on the day the victim died. He said that he and his cellmate tried to call out to the victim later in the day, but the victim did not answer them.

## II.

The United States Supreme Court in *Sell*, 539 U.S. at 180, held that a defendant who has been found incompetent to stand trial may be involuntarily medicated in an effort to restore competency only in "rare" circumstances. The Court in *Sell* recognized that it previously had held that a defendant has a constitutionally protected liberty interest in avoiding the involuntary administration of antipsychotic drugs. *See* 539 U.S. at 178-79 (citing *Riggins v. Nevada*, 504 U.S. 127, 134, 135 (1992)). The Court noted that only an "essential" or "overriding" state interest could overcome this liberty interest. *Sell,* 539 U.S. at 178-79 (quoting *Riggins*, 504 U.S. at 135.) The Court held that "the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." *Sell,* 539 U.S. at 179.

The Court in *Sell* set out four factors that must be established before a court can order that a defendant be involuntarily medicated to restore competency. *See* 539 U.S. at 180-81. First, the court must find that *important* governmental interests are at stake. *See Sell,* 539 U.S. at 180. Second, the court must find that involuntary medication will *significantly further* those important governmental interests, in that the medication must be substantially likely to render the defendant competent and must be substantially unlikely to cause side effects that will interfere significantly with the defendant's ability to assist in his trial defense. *See Sell,* 539 U.S. at 181. Third, the court must find that involuntary medication is *necessary* to further those governmental interests, in that alternative, less intrusive treatments are unlikely to restore competency. *See Sell,* 539 U.S. at 181. Fourth, the court must find that the administration of the medication is medically appropriate. *See Sell,* 539 U.S. at 181. The Court in *Sell* also held that, before considering whether the Government should be allowed to involuntarily medicate a defendant to restore competency, the court should consider whether involuntary medication was warranted for another purpose, such as when the defendant poses a danger to himself or others or when medication is necessary to treat a defendant who is gravely ill. *See Sell,* 539 U.S. at 181-82.

In this case, the Government's own expert opined that Horne did not pose a danger to himself or others while incarcerated in a secure housing unit. There also is no evidence before the court that Horne is "gravely ill," requiring medication. Therefore, I find that, at this time, no other grounds exist to support the involuntary medication of Horne other than for the sole purpose of establishing competency. That being the case, I must analyze the facts and circumstances of this case to determine whether each of the four factors set forth in *Sell* has been established. The

parties have requested that, before the court sets an evidentiary hearing to allow the psychological and psychiatric experts to provide evidence on the psychological and medical issues raised by the *Sell* factors, the court decide whether the forced medication of Horne to restore competency would serve an important governmental interest.

The Court in *Sell* recognized that the "Government's interest in bringing to trial an individual accused of a *serious* crime is important ... whether the offense is a serious crime against the person or a serious crime against property." 539 U.S. at 180 (emphasis added). The Court in *Sell* did not, however, offer any definition or explanation of what it considered to be a "serious" crime. The Fourth Circuit, in *United States v. Evans*, 404 F.3d 227, 237 (4th Cir. 2005), held that courts should consider the maximum penalty authorized by statute to help assess an offense's seriousness. Almost a decade later, the Fourth Circuit went even further and held that "the central consideration when determining whether a particular crime is serious enough to satisfy [the serious crime] factor is the 'maximum penalty authorized by statute.'" *United States v. Chatmon*, 718 F.3d 369, 374 (4th Cir. 2013) (quoting *Evans*, 404 F.3d at 237). In this case, Horne is charged with premeditated murder, in violation of 18 U.S.C. § 1111, a capital-punishment eligible offense. There is no greater punishment than the death penalty. Although the Government in this case has agreed not to seek imposition of the death penalty, Horne, nonetheless, is facing a mandatory life sentence, if convicted. In *Chatmon*, the Fourth Circuit held that a crime that carried a possible maximum sentence of life imprisonment was a "serious" crime under *Sell*. *See Chatmon*, 718 F.3d at 374. Based on this, the court finds that Horne is charged with a "serious" crime.

Defense counsel argue that any important governmental interests served by prosecuting Horne are mitigated by other relevant evidence in his case. In particular, defense counsel argue that the court should consider the following facts in deciding whether the Government's interest in prosecuting Horne for murder should overcome Horne's constitutionally protected liberty interest in avoiding the involuntary administration of antipsychotic drugs:

1. The likelihood that Horne, if not restored to competency, would be committed, pursuant to 18 U.S.C. § 4246;
2. The likelihood that Horne, if tried, would be found not guilty by reason of insanity and committed, pursuant to 18 U.S.C. § 4243; and
3. The likelihood that, if Horne is restored to competency, it would impair his ability to present an insanity defense.

The Government argues that these factors should not be considered in determining whether it has an important governmental interest in prosecuting Horne. Further, the Government argues that none of these factors, if considered by the court, would mitigate its important governmental interest in prosecuting Horne on a charge of premeditated murder.

The Fourth Circuit has held that, at this stage of the *Sell* inquiry, the Government bears the burden of proving, by the clear and convincing standard, that the Government has an important governmental interest in prosecuting the defendant *and* special circumstances do not sufficiently mitigate the Government's interest. *See United States v. Watson*, 793 F.3d 416, 420 (4th Cir. 2015). Based on the facts

before it, this court has no difficulty finding that the Government has met its burden to show that it has an important governmental interest in prosecuting Horne. Thus, the court must turn its attention to whether any special circumstances in this case sufficiently mitigate that important governmental interest. "'While the ultimate burden of proving an important interest in prosecution always remains with the [g]overnment, we look to the defendant to demonstrate that the special circumstances of his case undermine the [g]overnment's interest once it is established that he stands accused of a serious crime.'" *United States v. Jenkins*, ___ F. App'x ___, 2019 WL 6713456 at *1 (4th Cir. Dec. 10, 2019) (quoting *United States v. Mikulich*, 732 F.3d 692, 699 (6th Cir. 2013)).

The Fourth Circuit has held that a court, in conducting a *Sell* inquiry, must consider whether the defendant may be held under a civil commitment under § 4246 if not restored to competency. *See United States v. Sheikh*, 651 F. App'x 168, 172 (4th Cir. 2016). Section 4246 allows for the civil commitment of a defendant due for release who suffers from a "mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(a). While Riley testified that, if not restored to competency, Horne would be subject to civil commitment pursuant to § 4246, any such commitment of Horne would occur only if the Government moved for his commitment, and the court found that his release posed a substantial risk of bodily injury to another person or serious damage to property of another. Based on the serious nature of the current charge against Horne, the court will assume that the Government would move to commit him under § 4246, if he is not restored to competency. Nonetheless, Riley did not offer any opinion as to Horne's

dangerousness. Riley did state that Horne did not pose a danger to himself or others, when held in the most restrictive housing available at Butner, but she did not offer an opinion as to what, if any, risk he posed, if released from custody in his current mental condition. While it could be argued that Horne would pose some danger to others if he did, indeed, kill his cellmate, the only substantive evidence before the court on this issue is that a grand jury has found probable cause to charge Horne with his cellmate's murder.

The only information that the court has before it concerning Horne's criminal history, was contained in the Pretrial Services Report. According to the Pretrial Services Report, Horne has prior criminal convictions as an adult for attempted aggravated robbery, aggravated burglary, theft of property valued at more than $1,000, assault with bodily injury on two separate occasions, reckless endangerment with a deadly weapon, aggravated assault and being a felon in possession of a firearm. The court does not have any information before it as to the facts and circumstances of these crimes or whether Horne's mental illness contributed to these crimes. In fact, the information contained in the Pretrial Services Report, which was taken from Horne's Pre-Sentence Report for his federal firearm conviction, stated that a forensic evaluation of Horne was performed, and he was found competent to stand trial, in that he did not suffer from any mental illness or defect at that time.

Based on this record, the court cannot find that Horne would be subject to civil commitment under § 4246. Even if the court were to assume that Horne would be subject to indefinite civil commitment under § 4246, the court does not find that

this would mitigate the Government's interest in prosecuting Horne for this crime. Most federal crimes carry a maximum statutory sentence of a certain number of years, i.e. 10 or 20 years. Section 4246 allows for an indefinite commitment until such time as a defendant's mental condition has improved to the point that he no longer poses a danger. Thus, in most cases, a defendant's indefinite commitment under § 4246 could result in the defendant being held in custody for a longer period than if convicted of the underlying charge. That is not the case here. Again, Horne is charged with premeditated murder. Since the Government has agreed not to seek the death penalty, Horne, if convicted, faces a mandatory life sentence. Thus, any civil commitment under § 4246 would not be for a longer period than the sentence Horne faces. Therefore, the court finds that Horne's potential civil commitment under § 4246 does not mitigate the Government's interest in his prosecution in this case.

Turning to defense counsel's next argument, the Fourth Circuit has not held that the possibility that a defendant would be found not guilt by reason of insanity mitigates a finding of an important governmental interest in restoring a defendant to competency to prosecute. *See Watson*, 793 F.3d at 423, n.5. The Fourth Circuit, however, has recognized there is a split of authority among the courts of appeals that have addressed the issue. *See Watson*, 793 F.3d at 423, n.5. Even if the court assumes that the Fourth Circuit would hold that an insanity finding should be considered in mitigation of the governmental interest in prosecuting most federal criminal cases, the court does not believe that the fact that Horne intends to raise an insanity defense should mitigate the Government's interest in prosecuting this case.

Horne has not provided sufficient evidence for the court to determine that an insanity defense likely would be successful in his case. *See United States v. Banks*, 2015 WL 1932928, at *17 (W.D. Va. Apr. 29, 2015) (likelihood that prosecution would end in not guilty by reason of insanity verdict mitigates against governmental interest in prosecution). Riley offered no opinion on Horne's sanity at the time of the alleged offense in her Forensic Evaluation report. Nor was any such opinion contained in the earlier psychological report. Further, Riley testified that she did not address Horne's sanity in her evaluation because a defendant's sanity typically is not assessed until a defendant's competency is established. The fact that Horne was found to be suffering from a serious mental illness at the time of Riley's forensic evaluation is not evidence of his insanity at the time of the alleged offense. Also, the fact that three lay witnesses have testified that Horne was acting strangely near the time of the alleged offense does not address his sanity at the time of the alleged offense.

Even if the court assumes that Horne will be found not guilty by reason of insanity at trial, he would then face commitment under 18 U.S.C. § 4243. Section 4243 provides for the indefinite commitment of a defendant found not guilty by reason of insanity of an offense involving bodily injury until such time as the defendant proved, by the clear and convincing standard, that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another. *See* 18 U.S.C. § 4243. As outlined above, the time of indefinite commitment Horne would face if committed under this section would not be for any longer than the mandatory life sentence he faces, if convicted. Therefore, the court

finds that Horne's potential commitment under § 4243 does not mitigate the Government's interest in his prosecution in this case.

Defense counsel also argue that the court should consider whether restoring Horne to competency would impair his insanity defense as a mitigating factor. Defense counsel, however, have not provided the court with any case law holding that this should be considered as a mitigating factor under the *Sell* analysis. Defense counsel also have not provided the court with any evidence showing that the defendant's insanity defense would be impaired by his restoration to competency. Defense counsel also argue that the more than three-year delay to date in bringing Horne to trial should mitigate against the governmental interest in his prosecution. Counsel argue that this delay has lessened the likelihood that the Government can obtain a conviction of Horne. Again, the court does not have the Government's evidence against Horne before it. The court does not know if the Government's evidence includes any eyewitness testimony, which might fade with the passage of time. Therefore, the court finds that these arguments do not mitigate the Government's interest in his prosecution in this case.

No further potential mitigating factors have been identified by Horne's counsel, and the court cannot think of any other factors that would mitigate against the Government's interest in prosecuting Horne in this case. Based on the information before the court, Horne has fulfilled his term of imprisonment on his most recent federal firearms conviction.

*III.*

Based on the above, I find that the Government has demonstrated that it has an important governmental interest in prosecuting Horne on the charge of the premeditated murder of his USP Lee cellmate. Based on this finding, the court will schedule an evidentiary hearing to determine if the Motion for forcible medication should be granted pursuant to *Sell*, 539 U.S. 166. In preparation for this evidentiary hearing, the court will order that Horne be returned to Butner so that BOP personnel there may provide an addendum to their recent report, setting forth their prescribed treatment plan to restore the defendant to competency.

**ENTERED:** January 21, 2020.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE